who attempted to intervene in this matter. The Northwest Arctic Borough attempted to intervene as a matter of right in a lawsuit brought by the Kivalina Relocation Commission, excuse me, Committee, who had sued Teck Kaminko, which is the owner of the Red Dog Mine. The Northwest Arctic Borough is a unit of local government. It's similar to the counties in the lower 48. And there are 11 communities within that, within its boundaries. Some are incorporated, some are not. Many of the borough's residents live a subsistence lifestyle. And it's very important to the residents that the plants and the animals that live in that region be available there for subsistence, for their subsistence way of life. The mine is also in the borough. The borough is the legal entity charged with protecting the public health and safety, with protecting the environment, with protecting the subsistence resources. And it's also charged with determining what growth and development is appropriate within the borough. In addition, the Northwest Arctic Borough entered into a contract with Teck Kaminko, the operator of the Red Dog Mine, in an agreement called the Pilot Agreement. And it's a very long-term agreement. The first was entered into in 1996. It was amended in 2000. The agreement by which you get $5.5 million a year. Yes. This is the agreement. And that's very important to the borough because it's one of its two primary sources of revenue. We also get some through the Geelong Mountain Transportation. Let me just, let me jump to one concern that I have. What, where do the plaintiffs fall short in their ability to sort of represent your concerns? They fall short because they're representing the interests of the Kivalina and the six individuals on the committee. They are not representing all of the plaintiffs. With respect to the question of liability, what positions do you want to argue or what's your concern that might be different from the others, from the plaintiffs? Actually, what our interest is more primarily in the remedial and the remedy phase. You're really after the remedial part of this. Right. I mean, that's our primary interest. I think we have some interest in the liability issues just in terms of whether we can get them. I was wondering if you have some specific environmental concerns that you're concerned about that they're not going to advocate for or, you know. Before the district court, did you argue that you wanted to appeal solely in the remedial portion of this action? Did you make that comment? In the notice of appeal or? Sorry, in your motion for intervention. No. And we want to intervene on both. I think the argument is much stronger. But you're conceding to us the argument is stronger as to the remedial. It's stronger. I mean, I think we still have an argument on the issue of liability, because there is some question here about, I mean, if you look at the affirmative defenses asserted by Techminco, there is a question about whether the readings and the test results were accurate or not. And the borough has an interest in knowing whether or not they are accurate and whether or not, you know, these permits are being violated and what's entering the water and the environment of its land and within its boundaries. As to those issues, do you have any interest that's different than the, you know, the Kivalina Relocation Planning Committee? It struck me when I looked at this that you've got dandy issues on remedy, because you have an interest in a good environment and also you have an interest in the $5.5 million. In the $5.2 million. You have an interest that there be enforcement of the law, but in some way that doesn't kill off the plant and stop its operations, if possible. But as to just whether there are violations of the law, what do you bring to the party on that part of the case? I don't think we bring as much as we do, as I say, in the remedial phase. I think we do bring kind of a more balanced approach. I think Kivalina is fighting whether or not these test results are appropriate in that, and I think we would be a more balanced perspective. Could you make any different arguments? That's the question. Any different arguments, not perspective. That's kind of abstract. Are they making any arguments different from what you'd be making? Liability. At this point in time, I think they are. I think they're arguing for basically that there are violations based upon the reports submitted to the EPA. And what the Northwest Arctic Borough would be arguing is they may or they may not be, because there may be some other reasons why those test results were faulty or there are exceptions under the regulation. You mean you might make the same arguments better? No, I think they're going to argue that these were not, that the test results were valid, and we will argue that some of the test results were not. And that's really actually in conflict. I also would submit that they cannot adequately represent our interests. I mean, there's actually several reasons. First of all, you know, as I say, the Northwest Arctic Borough represents, you know, the residents of the entire borough, not just the residents of Kivalina or those six members who actually sit on the planning committee. There's an amount of case law out there which basically says a government entity can't represent those private interests. And the flip side is true. Those private interests can't represent the governmental interests. And I think what we could do is let's take the flip side. Let's say that the Northwest Arctic Borough filed a lawsuit and the Kivalina Relocation Planning Committee wanted to come in and intervene. And I would submit to you that their argument would be, you know, they're representing everybody. We're just representing our folks who want clean water to drink when we relocate. And they would have a very strong argument for intervention. And we probably would not oppose on that ground. I think we also have to look at the fact that any assertion that they can represent our interests is really belied by the record. First of all, they've opposed our motion to intervene. And they thought you were going to come in and intervene and then argue that because of your economic interest that everything the plant does is okay and there are no violations or they don't have standing or who knows what they were, why they wouldn't want you there. Well, they opposed the intervention motion on the grounds that we have no significantly protectable interest. And I submit to you that you can't, on the one hand, say, this northwest Arctic borough has no protectable interest, but we're going to protect that interest in court. And I don't see how a party can do that. I mean, you're basically taking both sides. Oh, well, they don't have any interest, but, you know, we'll make all the arguments they will. And it's not going to happen. Kennedy. The northwest Arctic borough about the size of New Jersey, did I get that right? I think it's Rhode Island. Rhode Island. Yes. So you think if it's that large, it must have some significant protectable interest, right? Yes, it does. What's the status of the litigation now? Actually, I think Mr. Cole will be able to answer that better than I will because we are not often served with the pleadings. My understanding and what I have read to date are motions for summary judgment filed by the native corporation that owns the land where the mine is located, and that Techminco has also filed a motion for summary judgment. And there's been motions, oppositions, and replies. Whether what the exact status is on the rest of the case, I think Mr. Cole would be in a better position because he's actually in the case. I would also argue, and I sent an expedited notice letter to the court, which I think supports the Northwest Archborough's position that the planning committee simply cannot represent the government's interest. In their opposition to Techminco's motion for summary judgment on page 12, they say, first, KRPC represents its six members, not the borough, not the city, or the native village in this lawsuit. Second, KRPC's members, for purposes of standing, are the six individuals on the committee who are adversely affected by Techminco's permit violations. On page 15, they say, the actual facts are simple. KRPC members are not representatives of government and thus have no official capacity. By the way, where's Techminco? Why aren't they here? I was just wondering the same thing. I mean, they're a party to this suit. Did they oppose your intervention? No, they did not oppose below, and I assume they did not want to invest additional resources. Why don't you tell them that at least one judge missed them? I will do that. I was on that case. I wrote it. Well, maybe more than one judge missed them. I don't think I missed them. More than one judge missed them. No, it just struck me that it would be helpful if they had been here, but I guess I'm not going to. Yeah, I think we're, I agree we're missing a perspective that they're, you know what, I would really, just so that you know where I'm coming from, I think you probably do have a right to intervene. I'd like to know from the other side why we should affirm the district court or limit your right to intervene to the remedial phase where you clearly have a very strong interest in bashing any sort of injunctive relief that would take place. I will certainly take a seat. You can reserve the rest of your time if you feel it's necessary. I know you've heard of the Red Dog. Yes, we've heard of it. It's currently on appeal. It's currently under review by the United States Supreme Court, so we'll know shortly. It's been a long day. Apologize for the informality here. I guess it's good afternoon. At one point it was good morning, Your Honors. Good afternoon, Your Honors. My name is Luke Cole. I'm with the Center on Race, Poverty, and the Environment in San Francisco, and I represent the appellees, Kivalina Relocation Planning Committee. Why don't you want to let them in the lawsuit? Wouldn't they only help and add to your arguments, or are you afraid they would take Well, I think if you look at their stated position at ER-4 in all of their affirmative defenses, it's the plaintiff has failed to state a claim, the court lacks subject matter jurisdiction, the plaintiff has failed to give proper notice, the plaintiff lacks standing, the plaintiff has failed to exhaust their administrative remedy. The Northwest Arctic Borough comes in here today, and I think the central irony is that they are asserting an interest in the protection of the environment in the borough, but they're trying to intervene as a defendant. And their express ambition in intervening as a defendant is to dismiss the suit, is to get rid of KRPC's suit, by arguing that KRPC doesn't have standing to bring the case in the first place. So they're sort of like a Trojan horse intervening here. I mean, if they intervene, they're not on your side, is the way But they are absolutely They've found themselves as a defendant. They are absolutely hostile to the interests of KRPC, as I think all of their all of their pleadings make clear. But if they have governmental interests for an area the size of Rhode Island and, you know, 10,000 people as opposed to how many are in Kivalina Village, it seems like they might have something to add to the proceeding. I disagree, Your Honor, because I think they need to have a significantly protectable interest. And they're asserting a governmental interest and a contractual interest. But the contractual interest isn't significant. If the contract were at issue in this suit, I would agree with you, Your Honor. The remedy that might be fashioned could affect the proceeds that are already pursuant to that contract. I think that's totally speculative. And if that contract was affected, they have a remedy of a breach of contract suit. They don't need to be in this suit to protect their interests. The contract here is not on the table. This is a suit between the two. Do they have any enforcement responsibility over the way in which the mine is operated? They have their own local land use jurisdiction and powers, and they have a local land use ordinance, which is in the record. That is independent of the permit which is issued by the Federal EPA, which is the property and transactions that we're talking about here. They have no enforcement, no way of helping to monitor how the mine operates? That's correct. None whatsoever? I mean, other than their local land use authority. But it's a Federal permit. Maybe we should order that they can intervene as a plaintiff. Excuse me? Maybe we should order that they get to intervene but only as a plaintiff. How would you like that? Well, if you order that they can't, you know. They can't do that. Right. But it just seems like they have some kind of type of governmental interest in the area. I think they have a governmental interest in the area. They choose to assert as a defendant. But here is the nub of it. They do not have a significantly protected interest in the property and transactions which are at the heart of this lawsuit, which is the permit and the violations of the permit. I mean, they make an unlikely defendant. They don't own the permit. They don't own the land. They're not responsible for the violations. And they can't do anything to remedy the violations. Do they have any rights under the contract to demand some sort of corrective action or anything? I don't know the answer to that because the contract does not issue in the suit. Let's say, I mean, let's take their worst-case scenario. Let's say we win the suit and we get some remedy that closes the mine. That has an impact on their contract, but no different than anybody else's, anybody else who has a contract of facility, whether it's the people who supply the toilet paper for the bathrooms or the people who supply the bottled water or anything else. That's quite a difference. There's quite a difference between those. Well, and look at the remedy. If the contract is breached, they have a breach of contract action. They don't need to be in this suit to have a remedy for any impact. Maybe there's a way in which the district court could fashion relief that would avoid any breach of the contract. That's possible. But I don't think that argues for letting them in here. But further to Judge Pais' question, does your client have any objection to their being permitted to intervene in the remedial phase? Our client objects because we're limited to that. Our client objects, I mean, if it's intervene in everything or intervene in remedial, we would say limit their intervention, obviously. But if that, if the choice is no intervention and intervene in the remedial, we would say no intervention. Because of the way the borough has operated here, the borough has operated as the Bigfoot. The members of the borough have tried to bully our clients in Kivalina by saying this is not the way, bringing this lawsuit is not the way that the Inupiaq resolve their problems. Is Kivalina a smaller community within the borough? It's a community of about 400, and it's one of 12 villages that make up the borough. And it's asserting sort of an independent interest from the borough? Yes, because the borough has been aware of these thousands of violations by the mine for many, many years and has taken absolutely zero enforcement action when they could under the Clean Water Act. That's the enforcement action. That's what I just asked you. You didn't tip me off to that. Yeah. I mean, they, they, any citizen, any governmental authority has the opportunity under the Clean Water Act to bring the citizen enforcement suit that the Kivalina Relocation Planning Committee has. I thought you meant that they have independent authority. Well, I'm also concerned about that as well. Yeah. So did you, now, have you filed for summary judgment? Is that what I'm looking at here? The status, to answer Judge Pines' question, the status of the case is complicated. We filed a motion for summary judgment on 1,900 of the claims, or 1,980 of the claims in April. 1,980 of the claims? Of the 2,171 claims violations. So 90 percent of the claims are in a summary judgment motion right now. While that was pending, and they filed a Rule 56-F extension, they got an extension, we've been doing discovery. While that was pending, both Tech Cominco and the NANA Regional Corporation, which was allowed to intervene because they own the land on which the mine sits, filed motions to dismiss on the, or motions for summary judgment on standing grounds. And those have been completely briefed and are under submission. Our reply in our motion for summary judgment is due two weeks from yesterday. This is in the district court? In the district court. And the pleadings are voluminous. Well, they're not taking this as it comes out. Excuse me? I think. That's an internal comment. Okay. We're just, we're sort of, this has been, as Judge Wardlaw said, this has been a very long morning. It's been a very long morning, but I think that what you have to come back to is that the Northwest Arctic Bureau does not meet any of the three tests, the three substantive tests under Sierra Club for intervention. I don't think they have a significantly protectable interest because they don't own the permit. They're not responsible for the violations. But don't they have an interest in the remedy that, because if the remedy stops the plant from operating or if the remedy causes the plant to operate in some way that hurts the public? The only remedies that we're asking for here are penalties for the violations and an injunction ordering them to comply with the permit. Yeah, but actually the request for relief is broader than that. You ask for any just and equitable relief. I understand that standard in complaints, but what that may mean in any given case, especially a case of the magnitude that you have pursued, it is kind of an unknown quantity at this point. And I could see why they'd want to come in. I also think it's telling that TEC isn't opposing their coming in. I think that's telling on the liability face, but your request for relief is somewhat broader than just getting an injunction to comply with the permit. There is boilerplate in there saying if there's anything else the Court would like to order. Right. Well, that's the worrisome part if I were in. But I think, Your Honor, there's a reason that TEC Cominco isn't here, because TEC Cominco wants them in. Well, is there an official reason why? Did TEC file a pleading or anything to alert us that they take no position on intervention? Are they supporting intervention? They did not oppose intervention below, and they provided no briefing in this Court. It looks like they didn't submit a brief or anything. I think that what you have to show under your own jurisprudence in Fourth Conservation Council is that injunctive relief sought by the plaintiffs will have a direct, immediate, and harmful effect on a legally protectable interest. And I don't think that they can show that. This is not a situation like the Southwest Center for Biodiversity. Your case, Judge Gould, this is not a situation where the relief attacks the actual document or the contract. In that situation, it was the implementation agreement whereby third parties actually have some rights. There's nothing in the relief here that goes to the contract that they have with TEC Cominco. That's an independent thing that's outside of the suit. Could you go into the district court here? If you did a bang-up job on liability, and you found all kinds of permit violations, could you go into the district court and say, we want you to enjoin the plant from operating unless and until this is corrected? Yes, I think so. So you could ask the district court to close down the plant completely? Well, we would ask the district court to ask the plant to comply with the permit. Right, but maybe they could say, don't operate the plant until you're in compliance. Yeah. Okay, so if that's the case and the plant closes, and that affects the economic interest of the borough, which I think is what you're asserting. Then they have a breach of contract suit. Then they have a breach of contract suit. And that doesn't give them a significant protectable interest for purpose of operating in the remedy phase? No, I don't think so. I can see how the economic interest of TEC and the economic interest of NAD are compatible. But NAD does seem to have additional interests that I would think, when you're looking at compliance with aspects of a permit, there's a variety of ways that a permit can be complied with that could affect the environment, that could affect subsistence rights of people other than your small borough, not borough, but village within the entire borough. There are the other villages that have to be looked out after. They are affected by this. But I think you're making the assumption that the borough would actually try to protect those interests. And the history in this case is that they have not. They have opposed the village of Kivalina when it has tried to enforce this permit. That's what they're doing here. They're saying, Kivalina doesn't have any standing. You should dismiss this suit. You should get out of here. Their mayor and their former mayor have been very active in providing declarations to TEC Cominco and to NANA Regional Corporation in their motions to dismiss. They have played an active role in trying to get rid of this case, which is why my client, when presented with the question, would you let them in at the remedial phase, they said, why should we let them in there? They've tried to get rid of us all the way along. They're clearly hostile to our interests. We don't want them at the table because they are going to sit and they're going to intimidate our members at that table. Having the power brokers from the local borough, it's like having the governor come to your cocktail party and sit there and say, you know, what are you going to do here? That's very intimidating to my clients. And if they can avoid that, they would like to avoid that. Kivalina, like a village corporation under Ameson? Yes. It's a native village. It's a federally recognized tribe. Federally recognized. And it has an existence as an entity, right? Yes. But the Kivalina IRA Council, which is the official native village, that is not the plaintiff. The plaintiff is an independent citizen's committee, the Kivalina Relocation Planning Committee. And what's their legal, the nature of that group? Like just an association? Yeah, they're an unincorporated association. They're appointed by the city council and the IRA council and their members are members of those bodies. Do they have a declared mission statement? Kivalina is relocating from one part of their little barrier island to the other. They're assisting in that relocation and all related actions. And this is a related action in that they have to identify clean water for what they're going to drink when they relocate. All right. Thank you, Pat. So I know you have some rebuttal, but there's a few points you want to make. Thank you. Thank you very much. This is a helpful argument. I'd just like to make two brief points, if I may. First of all, the Northwest Arctic Borough does have a significantly protectable interest. And I think the relocation committee's argument to the contrary is really disingenuous because the Northwest Arctic Borough could have filed this lawsuit in the first place. It would have standing to bring the action. But it couldn't file it as a defendant. No, it could not. Now, we're in a very unique position here, though. We have our governmental, environmental interests in, you know, and that's we're aligned with the plaintiffs there. We also have the economic interests as a result of the pilot contract. And so we're in this unique position where we have, you know, kind of we have to balance our interests. And we had to choose. And to be honest, Tecumseh said we don't oppose. And as you can see, we got vociferous opposition from the planning committee. So we opted to go in on the side of the defendants. In our motions, we argued both. I mean, what we'd like to do is be at the table so that we can fashion a plan that protects our citizens, you know, the environment, protects the subsistence resources, and promotes economic growth within the borough. And we need to be at the table. I mean, it's one thing to say, oh, yeah, well, they can file a lawsuit later. But one of the purposes of intervention and the Court's decisions that say interpret this intervention more broadly and flexibly so we get all concerned persons before here. So before the Court, you know, let's not litigate. I mean, it's going to be litigated for a number of years anyway. You know, and then we're going to have to do a separate litigation where, you know, we may be able to avoid this, you know, in this lawsuit by fashioning a remedy that does not harm the Northwest-Hartford Borough. And we need to be at the table. We have a right to be there. We've satisfied all parts of the test. And we ask that you reverse the District Court's order. All right. Well, thank you very much, Counsel. So, Cavalina Relocation Planning Committee v. Northwest-Arctic Borough is submitted. And the Court is adjourned for the day. All right. This Court is adjourned. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you.
judges: Wardlaw, Gould, Paez